[Cite as *Kinkaid v. Kinkaid*, 2016-Ohio-7680.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| BETH KINKAID | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| CHARLES KINKAID, JR. | : | Case No. 2016CA00001 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Domestic Relations Division,
Case No. 2014DR01153


JUDGMENT:    Affirmed


DATE OF JUDGMENT:    November 7, 2016


APPEARANCES:

For Plaintiff-Appellee

LORRIE FUCHS
3974 Wales Avenue, NW
Massillon, OH  44646

For Defendant-Appellant

SANDRA K. CHESHIRE
1401 South Main Street
Suite 102
North Canton, OH  44720

*Farmer, P.J.*

{¶1} Appellant, Charles Kinkaid, Jr., and appellee, Beth Kinkaid, were married on June 18, 1988. On November 4, 2014, appellee filed a complaint for divorce. Hearings before a magistrate were held on April 30, June 29, and August 26, 2015. By decision filed October 15, 2015, the magistrate divided the parties' property, found appellant had committed financial misconduct, and ordered appellant to pay appellee spousal support in the amount of $2,080 per month for one hundred and two months. Appellant filed objections. A hearing was held on December 14, 2015. By judgment entry filed December 16, 2015, the trial court overruled the objections and approved and adopted the magistrate's decision. A final decree of divorce was filed on January 19, 2016.

{¶2} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶3} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACTS REGARDING FINANCIAL MISCONDUCT WITH THE 2013 TESPHE LOAN, BY DEFENDANT, WHICH WERE NOT SUPPORTED BY THE FACTUAL RECORD AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶4} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACTS REGARDING FINANCIAL MISCONDUCT WITH THE 2014 TESPHE LOAN, BY

DEFENDANT, WHICH WERE NOT SUPPORTED BY THE FACTUAL RECORD AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶5} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACTS REGARDING VALUATION OF THE 1998 JEEP, WHICH WAS NOT SUPPORTED BY THE FACTUAL RECORD AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶6} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACT WHEN IT CHARGED THE HUSBAND IN CONNECTION WITH THE DISTRIBUTION OF ASSETS AND DEBTS, FOR $10,956.94 OF MONIES EARNED AND KEPT, WHICH WAS NOT SUPPORTED BY THE FACTUAL RECORD AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

V

{¶7} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACTS REGARDING HUSBAND'[S] ANNUAL EARNINGS, WHICH WERE NOT SUPPORTED BY THE FACTUAL RECORD AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

VI

{¶8} "THE COURT OF COMMON PLEASE (SIC) COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY USING WIFE'S PART-TIME EARNINGS FOR PURPOSES OF DETERMINE SPOUSAL SUPPORT, WHEN SHE IS CAPABLE OF OBTAINING FULL TIME WORK."

VII

{¶9} "THE COURT OF COMMON PLEASE (SIC) COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY FAILING TO ACCOUNT FOR AND DETERMINE HUSBAND'S REASONABLE LIVING EXPENSE, FOR PURPOSES OF DETERMINING SPOUSAL SUPPORT."

VIII

{¶10} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACTS REGARDING WIFE'S REASONABLE LIVING EXPENSES, WHICH WERE NOT SUPPORTED BY THE FACTUAL RECORD AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IX

{¶11} "THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION IN THE AWARD OF SPOUSAL SUPPORT TO THE WIFE, FOR $2,080 A MONTH FOR 108 (SIC) MONTHS, BY FAILING TO CONSIDER AND PROPERLY APPLY ALL THE FACTORS OF O.R.C. 3105.18."

{¶12} The assignments of error will be reviewed under the standards of abuse of discretion and manifest weight.

{¶13} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶14} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.* at ¶ 19.

{¶15} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

I, II

{¶16}  Appellant claims the trial court erred and abused its discretion in finding he committed financial misconduct related to the 2013 and 2014 TESPHE loans.  Appellant claims the decision was not supported by the record and was against the manifest weight of the evidence.  We disagree.

{¶17}  In its judgment entry filed January 19, 2016, the trial court adopted and incorporated the magistrate's October 15, 2015 decision.  In said decision, the magistrate found the following under "DEBTS":

18. On May 1, 2013, Husband took out a loan from his TESPHE in the amount of $28,000.00.  Per Ford Motor Company, prior to May 1, 2013 Husband did not have an outstanding loan balance prior to taking the $28,000.00 loan per Ford Motor Company.  Of the $28,000.00, Husband took $16,000.00 and bought the Victory Vision Motorcycle which is listed in the Dimmerling appraisal.  He cannot remember what became of the remaining $12,000.00.  Wife gave credible testimony that she was not aware of the extra $12,000.00 nor was Wife aware of the fact that Husband was going to take a loan out for $28,000.00 when the motorcycle cost $16,000.00.  Husband concealed the $12,000.00 from the Wife.  Neither Wife nor the marital estate ever benefitted from the $12,000.00 obtained by Husband.  Husband profited from the extra $12,000.00 to the detriment of Wife's property interests.  Husband committed financial misconduct with regard to the $12,000.00.

19. On January 3, 2014, Husband took out a loan from his TESPHE in the amount of $11,700.00. That sum was deposited into his account. Husband then deposited the sum of $3,100.00 into the joint account and also paid $4,706.16 toward the outstanding TESPHE loan leaving $3,893.84. Husband could not remember what he did with the $3,893.84 which remained from the $11,700.00 January 3, 2014 TESPHE loan. Husband concealed the $3,893.84 from the Wife. Wife gave credible testimony that neither she nor the marital estate benefitted from the $3,893.84. Husband profited from the extra $3,893.84 to the detriment of Wife's property interests. Husband committed financial misconduct with regard to the $3,893.84.

20. Due to his financial misconduct, Husband is solely responsible for a total of $15,893.84 of the outstanding TESPHE loan which then leaves $65.24 as marital debt from the TESPHE loan.

{¶18} Appellant testified appellee knew of the loans, and some of the funds were used to pay back other loans. April 30, 2015 T. at 125-126; June 29, 2015 T. at 4-5. However, appellant was unable to give any accounting for the use of the funds except for the $16,000.00 motorcycle. April 30, 2015 T. at 124-126; June 29, 2015 T. at 8-10. Appellee denied any knowledge of what happened to the remainder of the funds or that it was used for the family. April 30, 2015 T. at 30-34, 134-136.

{¶19} The trial court awarded appellant the motorcycle, but because of his inability to account for the remainder of the loaned amounts, assigned the debt to appellant.

{¶20} We find the trial court's decision is not contrary to the evidence presented. The trial court chose to believe appellee over appellant which is clearly within the trial court's province.

{¶21} Upon review, we find the trial court did not err or abuse its discretion in finding appellant committed financial misconduct.

{¶22} Assignments of Error I and II are denied.

III

{¶23} Appellant claims the trial court erred and abused its discretion in assigning the valuation of a 1998 Jeep. We disagree.

{¶24} In its decision filed October 15, 2015, the magistrate found the following under "STIPULATIONS AND SUMMARY OF ISSUES":

6. The 1998 Jeep Wrangler with 200,000 miles on it is valued at $6,475.00. During these proceedings, Husband drove the vehicle to Stark County without getting it viewed by the appraiser despite being required to do so. Wife gave credible testimony that the 1998 Jeep Wrangler has a new engine in it and submitted a NADA value as to the Jeep. Wife also gave credible testimony that Husband admitted to her that he knew he could get at least $5,500 for the Jeep. The 1998 Jeep is awarded to Husband.***

{¶25} The only evidence presented as to the Jeep's value was the amount assigned by the "NADA book value" and appellee ($6,475.00). April 30, 2015 T. at 35-36; Plaintiff's Exhibits 9A. The appraiser, Rodney Dimmerling, listed a $3,800.00 value for the Jeep, but never viewed the vehicle in person. April 30, 2015 T. at 38, 40, 117; August 26, 2015 T. at 41; Plaintiff's Exhibits 10 and 11. Appellant objected to the amount, but never offered an alternative valuation. April 30, 2015 T. at 117.

{¶26} Upon review, we find the trial court did not err or abuse its discretion in its valuation of the Jeep.

{¶27} Assignment of Error III is denied.

IV

{¶28} Appellant claims the trial court erred and abused its discretion in charging him with $10,956.94 of monies kept and earned in connection with the distribution of assets and debts. We disagree.

{¶29} In its decision filed October 15, 2015, the magistrate found the following under "STIPULATIONS AND SUMMARY OF ISSUES":

8. On the division of property Husband is credited with receiving $10,956.94 in monies he earned and then kept after the filing of the Complaint for Divorce. Husband failed to deposit the $10,956.94 into the parties['] joint account or provide same to Wife as was the past practice. Husband was given credit for $2,000.00 he gave to Wife per entry dated 12/16/14. Husband kept the $10,956.94 and profited from same to the

detriment of Wife's property interests.  This court did not include the lost or refused overtime of $3,539.74 in calculating the figure of $10,956.94.

{¶30}  During the course of the proceedings, appellant unilaterally switched the direct deposit of his salary from the parties' joint account at FirstMerit Bank to a PNC Bank account in his name only.  April 30, 2015 T. at 19-21, 24, 135-136; Plaintiff's Exhibit 8.  Appellee was left without funds to pay the mortgage, to the extent that she had to borrow money from friends and family.  T at 59-60; Plaintiff's Exhibit 40. Appellant admitted to this diversion of funds.  June 29, 2015 T. at 68.

{¶31}  Upon review, we find the trial court did not err or abuse its discretion in charging him with the $10,956.94 amount.

{¶32}  Assignment of Error IV is denied.

V, VI, VII, VIII, IX

{¶33}  Appellant claims the trial court erred and abused its discretion relative to the spousal support award.  Specifically, appellant claims the trial court erred on the issues of his annual earnings, appellee's annual earnings, his living expenses, appellee's living expenses, and in ordering him to pay appellee $2,080 per month for one hundred and two months.  We disagree.

{¶34}  R.C. 3105.18 governs spousal support.  Subsection (C) states the following:

> (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment,

and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience

so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶35} In its decision filed October 15, 2015, the magistrate found the following under "INCOMES":

25. Wife, age 48, is in good physical health. She is not in good mental and emotional health due to the stresses caused by the breakup of the twenty-seven year marriage. Wife is a high school graduate with 2 years of education toward becoming a minister in theology. Wife stopped her schooling once she became engaged to Husband. Wife's employment history consists mostly of jobs where she earned minimum wage or a little over minimum wage. After the parties daughter, Danielle, turned 1 ½ Wife quit her job in order to take care of Danielle as Danielle became very ill. Wife returned to work once Danielle became healthy. Currently, Wife works at RiverTree in children ministry and pastoral care. Wife works

thirty-two hours a week earning $22,853.63 in gross annual income. Wife has worked at RiverTree for seven years. Wife does have health insurance available to her through RiverTree at a cost of $190.00 per month. RiverTree does have a 401K, but Wife is not invested in it. Wife does not have a pension. Wife has reasonable living expenses of $2,702.00 which includes the monthly cost of insurance. Some of Wife's expenses were inflated because she included expenses that she pays for others, such as phone and food expenses.

26. Husband, age 48, is in good physical health. Husband appears to be in good physical and emotional health. Husband is a high school graduate. Husband currently works night shift at the Ford Motor Company in Kentucky. He has worked at the facility in Kentucky since moving there is 2012. He has worked for Ford since 1994 and now works Tuesday through Friday. Husband works on the production line at Ford earning $28.59 per hour. In addition to his hourly wage, Husband can receive profit sharing checks, overtime, bonuses, and shift differential. Husband pays union dues of $72.00 per month and he is paid weekly. Husband also pays $1,000.00 per month toward the outstanding TESPHE loans. Husband testified that he also volunteers his time at Danny's Gun Shop, although from Husband's posts ("Started Working at Danny's Gun Repair"), it appears that the Danny's Gun Shop time is more than volunteer time or a hobby. In 2011, Husband earned gross annual income of $82,198.00. In 2012, Husband earned gross annual income of

$148,522.87. In 2013, Husband earned gross annual income of $85,680.09. In 2014 Husband earned gross annual income of $91,997.24. During cross examination, counsel for Wife confronted Husband with her calculations for what should be Husband's projected income for 2015. Specifically, counsel indicated that he should be on track to earn $83,840.00 to which Husband responded: Sure we'll go with that. In addition to the $83,840.00, Attorney Fuchs argued that Husband could have earned additional sums for shift differential and vacation time worked. From the testimony and evidence presented, it is obvious that Husband refused extra shift opportunities for reasons that were clearly set forth in the testimony and in his text messages regarding his feelings about his Wife. This court finds Husband's gross annual income should equate to $86,940.00. This sum is reasonable in light of Husband's historical earnings. Husband has health insurance and a pension. Husband's monthly living expenses have been reviewed.

{¶36} In its judgment entry filed January 19, 2016, the trial court concluded the following:

The court considered all of the spousal support factors and finds spousal support to be appropriate and reasonable in this case. RC 3105.18(C)(1). Spousal support shall be taxable to Wife and deductible to Husband.

Commencing November 1, 2015, and subject to the continuing jurisdiction of the court, the Husband shall pay to the Wife the sum of $2,080.00 per month, plus 2% processing fee. This spousal support shall terminate upon either party's death, the Wife's remarriage or 102 months, whichever first occurs.

This court may modify the amount or term of this spousal support order upon the change of circumstances of a party, which includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, overtime, bonuses, living expenses or medical expenses. RC 3105.18(3)(1), (F).

The obligations set forth in this order are deemed to be necessary domestic support obligations which are non-dischargeable in bankruptcy. However, should a bankruptcy court permit discharge, this court reserves jurisdiction to continue and/or modify spousal support.

Unless agreed otherwise, all spousal support ordered herein shall be withheld from the wages or assets of the Husband pursuant to a withholding or deduction notice or appropriate court order. All necessary withholding language shall be included within the final entry.

Each party shall be responsible for their own health insurance and related expenses.

Commencing November 1, 2015, Wife shall immediately seek full time employment as set forth within this entry or at forty (40) hours per week and Wife shall keep a written record of her seek work efforts.

{¶37} The trial court's valuation of appellant's earnings was based upon his W-2 earnings for the years 2011 to 2014. Plaintiff's Exhibits 15-18. The amount chosen ($86,940.00) was a median amount between $82,198.00 to $98,522.87 ($148,522.87 earned in 2012 minus a $50,000.00 extraordinary bonus). On cross-examination, appellant agreed his average income for 2011 to 2014 was $91,566.00. June 29, 2015 T. at 33. Appellant also agreed in 2015, the year of the hearings, his income would be $83,840.00. *Id.* at 38.

{¶38} Upon review, we find the trial court did not abuse its discretion in determining appellant's income.

{¶39} Appellant argues appellee's income should have been imputed to an amount greater than an income based on thirty-two hours per week. We find the trial court acknowledged appellee only worked thirty-two hours, and ordered her to seek employment to reach forty hours per week. The trial court retained jurisdiction to address this issue given the fact that appellee was relatively new to the work force (seven years), and during the marriage, had been a part time worker and/or a stay-at-home spouse caring for the children, one of which had medical issues. April 30, 2015 T. at 10-14; June 29, 2015 T. at 34-35.

{¶40} Upon review, we find the trial court did not abuse its discretion in determining appellee's income.

{¶41} Appellant also challenges the trial court's determination of the living expenses of each party. Appellant argues some of appellee's living expenses were inflated, yet adopted by the trial court, whereas the trial court disregarded his living

expenses which should have totaled $2,200.00, thereby missing $1,128.00 in expenses. Appellant's Brief at 29-30.

{¶42} Appellant challenges the credibility of appellee's testimony relative to her living expenses. Appellee testified her anticipated expenses based on needs to be $3,468.00 per month. April 30, 2015 T. at 40-42; Plaintiff's Exhibit 12. As cited above, the trial court determined appellee's living expenses to be $2,702.00 per month, a difference of $766.00 less per month.

{¶43} Appellant testified to his living expenses amounting to approximately $1,150.00 per month. June 29, 2015 T. at 79-81; Plaintiff's Exhibit 29. Yet appellant argues the trial court deflated his anticipated expenses of $2,200.00 per month by $1,128.00 per month, for a net amount of $1,072.00 per month, a difference of $78.00 less per month. Any monthly union dues and/or loan payments deducted from appellant's paycheck are employment expenses and payments for loans from his pension accounts facilitated by his own choices. April 30, 2015 T. at 103-104.

{¶44} Upon review, we find the trial court did not abuse its discretion in determining the living expenses of each party.

{¶45} Appellant argues the spousal support award of $2,080.00 to be an abuse of discretion. In considering the gross income of each party and their respective living expenses, the spousal support award to appellee gives her approximately $16,400.00 less per year than appellant to live on for one hundred and two months. Considering the marriage was a long term marriage of twenty-seven years, appellant has the ability to earn overtime, and the trial court retained jurisdiction over the issue, we fail to find the

spousal support determination to be an abuse of discretion.  June 29, 2015 T. at 19; Plaintiff's Exhibits 26, 26A, and 27.

{¶46}  Upon review, we find the trial court did not err or abuse its discretion in fashioning the spousal support award.

{¶47}  Assignments of Error V, VI, VII, VIII, and IX are denied.

{¶48}  The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby affirmed.

By Farmer, P.J.

Hoffman, J. and

Baldwin, J. concur.

SGF/sg 9/27